UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EDWARD G. MASCOLL | ) | Case No. 08-10288-SSM |
| | ) | Chapter 13 |
| Debtor | ) | |

**MEMORANDUM OPINION**

Before the court are objections by the chapter 13 trustee, Gerald M. O'Donnell, and by two secured creditors, Wells Fargo Bank and Lakeport Cluster Association, to confirmation of a plan filed by the debtor on February 7, 2008.  The trustee has also filed a motion for entry of a confirmation order that would effectively amend the plan to resolve the main points of objection.  A hearing was held on April 23, 2008, at which the court heard the contentions of the parties and took the objections under advisement.  For the reasons stated—which include the lack of an automatic stay in this case, the debtor's extensive record of prior filings, and his failure to make plan payments or post-petition mortgage payments—confirmation will be denied.

Background

Edward G. Mascoll (the debtor) is employed as a meeting planner and last year earned slightly more than $103,000.   He filed a petition in this court on January 23, 2008, for adjustment of his debts under chapter 13 of the Bankruptcy Code, listing $460,312 in secured debt and $7,315 in unsecured debt.  This is the *seventh* chapter 13 case filed by the debtor in this court in the last three years.  The prior cases—none of which resulted in a confirmed plan—may be summarized as follows:

1

| Case No. | Chap. | Date Filed | Disposition |
| --- | --- | --- | --- |
| 05-12224-RGM | 13 | 6/10/05 | Dismissed 6/15/06 |
| 06-10781-RGM | 13 | 7/17/06 | Dismissed 11/8/06 |
| 06-11635-RGM | 13 | 11/30/06 | Dismissed 3/2/07 |
| 07-10760-RGM | 13 | 3/29/07 | Dismissed 4/18/07 |
| 07-11364-RGM | 13 | 5/29/07 | Dismissed 8/10/07 |
| 07-12864-RGM | 13 | 10/5/07 | Dismissed 1/15/08 |

Because the debtor had two prior cases dismissed within the year prior to the filing of the current case, and because no timely motion was filed to impose an automatic stay, no automatic stay is in effect, and the court entered an order to that effect on March 27, 2008 at the request of Wells Fargo. See, § 362(c)(4), Bankruptcy Code.

The plan before the court requires the debtor to pay the chapter 13 trustee an unspecified amount per month for 60 months. It provides that the debtor will make direct payment to Option One (the servicing agent for Wells Fargo) of the regular monthly payments becoming due post-petition, with prepetition arrears in the estimated amount of $120,000 being paid by the trustee in installments of $2,000 per month for 60 months. The debtor admitted at the confirmation hearing that he had not made the February, March or April payments to Option One, but explained that the reason was because he had been unsuccessful in getting Option One to send him a statement. He also admitted that he had not yet made any plan payments to the trustee, but asserted that he had only recently been told what the amount should be. When questioned by the court as to why he had not made any mortgage payments in the last couple of years, he stated that a private matter, which he declined to describe beyond asserting that it was of life or death importance, took priority, but that it was now resolved.

On March 3, 2008, the chapter 13 trustee filed an objection to confirmation and a motion to dismiss, both grounded on the debtor's failure to file his 2007 income tax returns. At the confirmation hearing, the debtor supplied the trustee with a copy of his 2007 Federal income tax return. Lakeport Cluster Association, which has filed a proof of claim asserting a secured claim in the amount of $10,828 for unpaid homeowners association dues and assessments, filed an objection to confirmation on the ground that the plan failed to provide for its secured claim. Wells Fargo, which has filed a proof of claim asserting prepetition arrears in the amount of $166,803, filed an objection asserting that the plan should not be confirmed because Wells Fargo intended to pursue its state law rights and remedies against the property and objected to any default cure through chapter 13 based on the debtor's "ample opportunities" in prior cases to reorganize his debts and his failure to do so.

Discussion

The requirements for confirmation of a chapter 13 plan are set forth in § 1325, Bankruptcy Code. Only four are implicated by the objections before the court: first, whether the plan complies with the requirements of chapter 13; second, whether the plan has been proposed in good faith; third, whether the debtor will be able to make all payments under the plan and to comply with its terms; and fourth, whether the debtor has filed all applicable Federal, state, and local tax returns. § 1325(a)(1), (3), (6), and (9), Bankruptcy Code.

A.

Addressing first the question of whether the plan complies with the requirements of chapter 13, the court can only conclude that the plan as filed does not conform to the requirements for a plan. Most notably, it does not specify the amount to be paid by the debtor

3

into the plan.  Instead, it simply provides for the payment to the trustee of "$__?__ per month for 60 months" and leaves blank the space provided for "total amount to be paid into the plan" as well as the estimated dividend on unsecured claims.  A plan that does not propose an actual payment amount but simply states, in effect, "tell me how much I have to pay," is not a plan.  Although the court recognizes that the debtor is not represented by counsel, he has been through six prior chapter 13 cases and by now should have a reasonably accurate knowledge of the debts that need to be paid and the monthly amount that would be necessary to pay them over a 60 month period.  The trustee—as he commendably often does, particularly when debtors are proceeding *pro se*—has attempted to fill the gap and cut to the chase by asking the court to enter a confirmation order that would fix the payments at $3,540.00 per month, from which he would pay allowed secured claims regardless of whether the plan formally provided for them.[1]  That, of course, raises the issue of the plan's complete failure to address Lakeport's secured claim.  The debtor can hardly assert that he was unaware of the Lakeport claim, since Lakeport filed both a proof of claim and notice of appearance in the debtor's prior case.  Indeed, Lakeport's secured claim is not the only secured claim not addressed in the plan.  The debtor lists Jaguar Credit as a secured creditor in his schedules, but provides no treatment for its claim in the plan.

---

[1] The claims bar date has not yet expired.  At this point, however, a total of three claims (all secured) have been filed totaling $179,988.55:

| Claim | Creditor | Amount | Type |
|---|---|---|---|
| 1 | Lakeport Cluster Assn | $10,828.32 | Secured |
| 2 | Wells Fargo Bank (arrears) | $166,803.05 | Secured |
| 3 | Reston Assn. | $2,357.18 | Secured |

The trustee's proposed payment of $3,504 per month for 60 months would result in total plan funding of $212,400, which would be sufficient to pay the filed claims in full as well as the trustee's statutory compensation.

The *only* claim specifically addressed in the plan is the Option One (Wells Fargo) claim. The plan provides that Option One "will be paid by the debtor(s) pursuant to the contract without modification except that arrearages, if any, will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated[.]" The amount of the regular contract payment is shown as $3,268 and the estimated arrearage is shown as $120,000, to be paid at the rate of $2,000 per month. Where the debtor came up with the $120,000 estimate for the arrearage is a puzzle, considering that in the debtor's most recent case, Wells Fargo filed an arrearage claim of $150,445. In any event, the court can only conclude that the purported plan put forth by the debtor is little more than the preliminary outline of a plan that fails to provide a definite treatment of creditor claims. If this were the first chapter 13 filing by a *pro se* debtor unable to afford counsel, the deficiencies would perhaps be understandable. Chapter 13 is unquestionably complex, and even though this district, like many districts, has a required form of plan, to fill it out correctly requires knowledge of how various types of claims may or must be treated in chapter 13. This debtor, however, is not a stranger to chapter 13. If he does not hold the record in this district for multiple filings, he is certainly a top contender. He gives the impression, moreover, of being an intelligent and well-educated person. If he has not learned, in the course of six prior filings over a period of three years, how to draft a chapter 13 plan, the court can only conclude it is because he has no real interest in restructuring his debts under chapter 13 and is simply filing cases and going through the motions of proposing plans in order to hold his creditors at bay.

B.

This leads to the question of whether the plan before the court can be found to have been proposed in good faith. For the reasons already stated, the court finds that it was not. Not only has the debtor merely gone through the motion of filing a plan, his failure to commence payments to the trustee,[2] coupled with his failure to make the post-petition payments to Option One, bespeak a lack of any conscientious effort to use chapter 13 for its intended purpose, which is to enable a financially-strapped debtor to restructure and repay his or her debts under court supervision and court protection. Chapter 13 exists, in short, to give the debtor a second chance. The debtor here, however, has had multiple opportunities to get back on track on his mortgage payments. At the confirmation hearing, he admitted that he had not made any mortgage payments in at least two years. During this time, he was almost continually under the protection of chapter 13 without making any apparent effort to comply with its obligations. He attempts to justify the failure to make mortgage payments during that time because unspecified private matters—which he declined to discuss—took priority in his mind. But using chapter 13 to hold creditors at bay while instead spending money (without either the knowledge or approval of the court or the trustee) for other purposes the debtor believes are more important is an abuse of chapter 13, pure and simple.

But there is another consideration as well, which is that the debtor apparently seeks confirmation of the plan because he believes it will prevent Option One from proceeding with a

---

[2] Unless the court orders otherwise, the first payment to the trustee is due 30 days after the date of the filing of the plan or the filing of the petition, whichever is earlier. § 1326(a)(1), Bankruptcy Code. Since the debtor's prior chapter 13 case—dismissed just eight days prior to the filing of this case—was dismissed for failure to timely commence payments to the trustee, the debtor cannot reasonably claim that he was unaware of this requirement.

scheduled foreclosure sale of his property. It is certainly true, as this court discussed in the order confirming that no automatic stay was in effect in this case, that confirmation of a plan might prevent Wells Fargo from foreclosing so long as the debtor complied with the terms of the plan. *See In re Dean C. Shaw and Heidi L. Shaw*, No. 94-13682-AA (Bankr. E.D. Va., January 23, 1995), available at http://www.vaeb.uscourts.gov/opinions/ssm/shaw.pdf (holding that chapter 11 plan may restructure debt owed to a secured creditor who has already been granted relief from the automatic stay to foreclose). The *Shaw* case, however, presented very different facts from those in this case. In *Shaw*, relief from the automatic stay had been granted to a bank holding a deed of trust against the debtors' home based on the debtors' lack of equity in the property and a determination that the property not essential to the debtors' reorganization simply because it was the roof over their head. An appeal of that order was taken, and a stay pending appeal was granted, conditioned upon the filing of an appeal bond. While the appeal was pending, a confirmation hearing was held on a chapter 11 plan that proposed to restructure the bank's loan by making monthly payments in an amount that would amortize the amount due at confirmation over 30 years at 8.5% interest, but with a balloon payment at the end of five years. Pending confirmation, the debtors had made three adequate protection payments to the bank. It was in that context that this court addressed "whether, in light of the prior ruling granting [the bank] relief from the automatic stay, it is proper to confirm a plan which, by restructuring [the bank's] debt, in effect nullifies the relief from stay by taking away [the bank's] right to foreclose unless there is a future default." *Id.*. at 7-8. After examining the limited case authority on the subject, this court concluded:

> [T]he Court can see no reason why the prior granting of relief from stay or the pending appeal therefrom should prevent the debtors from obtaining confirmation of a plan which would pay and satisfy the lien of the creditor who obtained the relief. The only issues determined by the order granting relief from stay were (1) that the debtors had no equity in the property and (2) that the property was not "necessary" for an effective reorganization. In terms of the standards for confirmation, however, there is no requirement that property which the debtors propose to retain have equity or be "necessary." The property in question—the house the debtors have lived in for 6 years—is clearly at least useful even if not strictly speaking essential, and its retention arguably benefits the debtors by eliminating the disruption that would result from their having to find another place to live and having to move their household goods. To hold that granting relief from the stay thereafter bars any effort to deal with the collateral as property of the estate would turn every chapter 11 case involving overencumbered property into a race to the courthouse to see if the secured creditor could be heard first on its relief from stay motion before the debtor could be heard on confirmation of its plan.

*Id.* at 11.  In the present case, not only has the debtor not been making payments pending confirmation, but chapter 13, unlike chapter 11 at the time *Shaw* was decided, does not allow the restructuring of a mortgage loan against a debtor's primary residence, but only the maintenance of regular payments "while the case is pending" and the curing of arrears over time.  *See* § 1322(b)(2) and (5), Bankruptcy Code.[3]  But even if confirmation of a chapter 13 plan providing for such a cure would effectively take away any right to foreclose based on those arrears so long as the debtor was in compliance with the plan, the simple fact is that the debtor in this case is not in compliance with the plan.  The plan requires the debtor to make the regular contract payments becoming due post-petition:  he has not done so.  Because confirmation of the debtor's plan would not eliminate the post-petition default, and because there is no automatic stay in effect, Wells Fargo would remain free to foreclose based on the post-petition default.  Given not only the failure to make post-petition mortgage payments, but the debtor's persistent record of not

---

[3]  The same limitation now applies in chapter 11.  *See*  § 1123(b)(5), Bankruptcy Code.

making mortgage payments while under chapter 13 protection for the last three years,[4] the court can only conclude that a plan that has as its sole apparent purpose an evasion of the restriction on serial filings that Congress attempted to implement through § 362(c)(4) is not proposed in good faith.

C.

The debtor's record of neither making plan payments nor mortgage payments while under chapter 13 protection raises concerns on another issue as well, which is the feasibility of the plan. On paper, at least, there is no reason to believe that the plan cannot be performed according to its terms. The payment of $3,540 per month proposed by the trustee would pay all the filed claims in full, with some surplus for claims not yet filed, but which are either scheduled by the debtor or which were filed in the debtor's prior cases. And the debtor's schedules of monthly income and monthly expenses shows a surplus sufficient to make the required payment. Normally, an evaluation of plan feasibility would end there. But in this case, the debtor's

---

[4] The growth in the arrears on the Wells Fargo note is dramatically reflected in the filed proofs of claim during the period the debtor has been under chapter 13 protection:

| Case No. | Date Filed | Wells Fargo arrearage claim |
| --- | --- | --- |
| 05-12224-RGM | 6/10/05 | $32,926.22 |
| 06-10871-RGM | 7/17/06 | $79,886.34 |
| 06-11635-RGM | 11/30/06 | $96,986.78 |
| 07-10760-RGM | 3/29/07 | $116,531.44 |
| 07-11364-RGM | 5/29/07 | $126,456.19 |
| 07-12864-RGM | 10/5/07 | $150,444.96 |
| 08-10288-SSM | 1/23/08 | $166,803.05 |

persistent record of non-payment during his prior chapter 13 raises a serious question of whether he is actually capable–in the sense of being willing or committed—to make the necessary payments. Fortunately for the success of bankruptcy reorganizations, the past is not always prolog. Nevertheless it can sometimes be a powerful indication of what is likely to happen in the absence of a showing that there has been a change in circumstances. The debtor's testimony that things have changed is of little assistance or probative worth, since the debtor declined to disclose exactly what the prior circumstances were. At the same time, to the extent that the company for which the debtor works is not controlled by him, a wage deduction order under § 1325(c), Bankruptcy Code, would provide reasonable assurance of payments to the trustee. For that reason, although the court has grave concerns on the issue of feasibility, the court cannot objectively find that the plan is not feasible, and therefore will not deny confirmation on that basis.

D.

The final issue is whether the debtor has filed all applicable Federal, state, and local tax returns for all taxable periods ending during the four-year period prior to the filing of the petition. *See* §§ 1308(a) and 1329(a)(9), Bankruptcy Code. The trustee's objection focuses solely on the calendar year 2007 Federal and Virginia income tax returns. Those returns, of course, relate to a tax period that ended prior to the filing of the petition in this case and therefore fall within § 1329(a)(9) even though the normal due date for the return occurs after the filing of the return and, in the case of the Virginia return, after the date of the confirmation

hearing.[5] If a return is not yet due when the meeting of creditors is held, the trustee may hold the meeting of creditors open to the later of 120 days after the date of the meeting or the date on which the return is due under the last automatic extension of time to which the debtor is entitled, and for which a timely request for extension has been made. § 1308(b)(1), Bankruptcy Code. This does not mean that a debtor has an automatic right to delay that long in filing his or her return. The determination of how much time is appropriate is entrusted in the first instance to the sound discretion of the chapter 13 trustee, subject to the statutory limit. On motion of the debtor, the court may extend the time, but only if the debtor demonstrates that his failure to file within the period set by the trustee "is attributable to circumstances beyond the control of the debtor." § 1308(b)(2), Bankruptcy Code. The record before the court does not reflect that the trustee held the meeting of creditors open. Thus, absent an extension by this court, both the Federal and state income tax returns for 2007 should have been filed by the date of the meeting of creditors, notwithstanding that outside of bankruptcy they would not yet have been due. The trustee does not contend that the debtor's filing of the Federal return after the meeting of creditors but prior to the confirmation hearing should bar confirmation. It was not quite clear on the record whether the trustee actually withdrew his objection to confirmation on the basis of unfiled returns, but in any event he did not press it,[6] even though the debtor made no showing that he has filed his Virginia income tax return. In any event, given that confirmation will be denied for other reasons, the court need not reach the issue of the Virginia income tax return.

---

[5] The due date for Virginia individual income tax returns is May 1.

[6] He did however insist, and the court directed, that the debtor supply a copy of the W-2 from his employment, since it was not attached to the copy of the return the debtor brought to court.

11

<u>Conclusion</u>

In summary, the court finds that the plan, although feasible if modified to conform to the trustee's proposal for entry of an order of confirmation, was not proposed in good faith and fails to comply with the requirements for a chapter 13 plan. A separate order will therefore be entered denying confirmation.

Date: _____   _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

Copies to:

Edward G. Mascoll
1940 Lakeport Way
Reston, VA 20191
Debtor *pro se*

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

Howard N. Bierman, Esquire
Bierman, Geesing & Ward, LLC
4520 East West Highway, Suite 200
Bethesda, MD  20814
Counsel for Wells Fargo Bank

James M. Collins, Esquire
6600 Tenth St., A-2
Alexandria, VA  22307
Co-counsel for Wells Fargo Bank

Lella Amiss E. Pape, Esquire
Rees Broome , PC
8133 Leesburg Pike, Ninth Floor
Vienna, Virginia 22182
Counsel for Lakeport Cluster Association